

Case 2:25-cv-01134-E   Document 1   Filed 02/10/25   Page 1 of 13   Page ID #:1

Steve Belilove (SBN 119506)
sbelilove@kaufmandolowich.com
Stefan Dandelles (pending admission *pro hac vice*)
sdandelles@kaufmandolowich.com
Kyle McConnell (pending admission *pro hac vice*)
kmcconnell@kaufmandolowich.com
Kaufman Dolowich LLP
11111 Santa Monica Blvd., Suite 850
Los Angeles, California 90025
(310) 775-6511
Attorneys for BERKLEY INSURANCE COMPANY a/s/o ANSCHUTZ ENTERTAINMENT GROUP

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERKLEY INSURANCE COMPANY a/s/o ANSCHUTZ ENTERTAINMENT GROUP,<br><br>Plaintiff,<br><br>v.<br><br>LUCY FOORD and EDWIN FLORES,<br><br>Defendants. | Case No.: 2:25-cv-01134<br><br>**COMPLAINT FOR FRAUDULENT CONCEALMENT, UNJUST ENRICHMENT, FRAUD, CONVERSION, AND FRAUDULENT CONVEYANCE**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, BERKLEY INSURANCE COMPANY ("Berkley"), as assignee and subrogee of ("a/s/o") Anschutz Entertainment Group ("AEG"), in support of its Complaint against the Defendants, LUCY FOORD ("Foord") and EDWIN FLORES ("Flores"), alleges as follows:

///


1

**COMPLAINT AND DEMAND FOR JURY TRIAL**

# INTRODUCTION

1. This is an action arising from Foord's fraud and theft of more than $915,128.63 from AEG while Foord was an employee of AEG. By this action, Berkley seeks, *inter alia*, compensatory damages and attorney's fees and costs.

# PARTIES

## PLAINTIFF

2. Plaintiff Berkley is a Delaware corporation engaged in the business of insurance with a principal place of business in Greenwich, Connecticut.

## DEFENDANTS

3. Upon information and belief, Defendant Foord is an individual who resides in Los Angeles, California, and is a citizen of California.

4. Upon information and belief, Defendant Flores is an individual who resides in Los Angeles, California, and is a citizen of California. Upon information and belief, Flores is currently married to Foord.

# JURISDICTION AND VENUE

5. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 respecting diversity jurisdiction insofar as it involves citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is appropriate under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district.

# FACTUAL ALLEGATIONS

7. From June 2010 until her termination in February 2022, Foord was employed by AEG as both an analyst and a Senior Director.

8. During her tenure, Foord was responsible for overseeing the development and execution of client service program initiatives for corporate client accounts including sponsorship fulfillment, activation, solving partnership issues and any other services pertaining to the needs of AEG's corporate clients.

///

9. Foord was also responsible for assisting AEG's partners in building their brands and growing revenue through activation initiatives designed specifically around facilities, teams, events, concerts, music festivals and properties.

10. On or about February 11, 2022, AEG's General Counsel received an email from an individual at StubHub informing AEG that StubHub noticed a potential fraud pattern involving a current AEG employee on their ticketing platform. Foord was the employee identified.

11. After discovering ticketing fraud, AEG's Business Process Management team began auditing Foord's past expenses in the database, Concur. Many of the expenses were from vendors in the following categories: high-end women's fashion, furniture, electronics, and gift cards.

12. These expenses in Concur all had seemingly legitimate business purposes, as most of this spending was identified by AEG as being for Coca-Cola as part of its marketing fund spending. However, Foord was using AEG funds for personal purposes.

13. After investigation, Foord was found to be committing fraud in two ways: (1) buying goods for herself with AEG's money and then altering receipts to conceal the purchases in her expense reports to make it appear the purchases were for AEG events, and (2) using AEG's money to buy tickets on StubHub and then reselling those tickets for her own gain.

14. For the fraudulent expense purchases, due to Foord's relationships with key sponsors, including Coca-Cola, and her position within the company, it was not uncommon for her to have numerous expenses and high-dollar amount expense reports.

15. Coca-Cola would work with Foord to inform AEG when and where they wanted to use these funds.

16. Additionally, Foord also oversaw the Toshiba and Wells Fargo accounts, and often had to buy tickets on behalf of those sponsors as part of their contractual ticket banks.

17. Foord committed employee theft through an expense reimbursement scheme for purchases on her company American Express corporate card.

18. In some instances, Foord manipulated receipt images to appear as legitimate business expenses. In other instances, Foord uploaded legitimate receipt images and misrepresented them as being for sponsors when they were actually her personal expenses.

19. Foord recorded most of the fraudulent credit card purchases submitted on her expense report to the intercompany expense account.

20. Foord misappropriated company funds by way of fraudulently purchasing StubHub tickets as follows:

    a. Foord purchased tickets through StubHub for her sponsors on her AMEX corporate card before COVID, and she submitted those purchases on expense reports. The expenses were fully approved and payment for the tickets was made to AMEX by AEG. Between March 2019 and March 2020, many events were cancelled due to COVID. StubHub's refund policy was to credit a buyer's StubHub account with 120% of the value of the ticket. They did not offer refunds back to the original payment method. As a result, Foord received $82,712.05 worth of StubHub credits in her account. She used that credit between May 29 and July 26, 2021 to purchase tickets from a StubHub account belonging to her husband, Flores. After fees and taxes, Flores received $55,503 from StubHub for the ticket sales.

    b. Flores was not selling legitimate tickets. StubHub defines these types of tickets as "ghost tickets," which are tickets that cannot be proven to exist at the time of posting or sale. Generally, these ghost tickets are paper tickets from venues that have not switched over to mobile ticketing. Mobile tickets can be verified and tracked throughout the StubHub sales process, whereas paper tickets cannot. In this case, the employee and her husband identified several venues in Las Vegas that were still using paper tickets and created "for

    sale" listings for paper tickets that did not exist. This allowed the employee to use her StubHub credits – generated from AEG's original payments – to effectively transfer AEG's money directly to her husband.

    c.  Foord used her AMEX corporate card to purchase additional nonexistent tickets through StubHub from accounts belonging to both her husband and herself (she had a separate, personal StubHub account). These transactions occurred between July 26, 2021, and December 22, 2021, and totaled $107,151.85 charged to AEG. After fees and taxes, Foord and her husband received $71,895.81 from StubHub for these sales. Ms. Foord claimed these ticket purchases were for her sponsors, Wells Fargo and Coca-Cola, and submitted receipts through Concur. On four of the twelve purchases, Foord doctored the receipt image from StubHub to make it appear to be for a Lakers game at Crypto.com Arena as opposed to the Lady Gaga concert in Las Vegas that the ghost tickets were created for.

    d.  Foord purchased $69,739.45 worth of StubHub tickets for various events between February 2019 and January 2020 using her AMEX Corporate Card. She then sold those tickets on StubHub and received $37,027 after fees. Total loss to AEG from this ticketing fraud scheme was $259,603.35.

21. On or about February 22nd, 2022, AEG's SVP & Chief Security Officer, EVP Human Resources and SVP, Business Process Management conducted an exit interview with Foord.

22. Foord initially denied committing any fraud, but when presented with printouts and details of what the company knew, Foord confessed to her fraudulent scheme.

23. Foord stated that no other employees or anyone else were involved in her fraudulent scheme.

24. Foord also showed AEG staff where she stored the receipts that she used to doctor receipts on her OneDrive.

///

25. Foord said she would provide restitution and repay AEG for entire amount of fraud, $890,000.

26. Foord also stated she was involved in large lawsuit against a medical provider and was expecting to receive a large sum from the suit.

27. However, it was discovered that Foord received approximately $250,000-$300,000 from the medical provider lawsuit settlement and the proceeds were used to purchase an Airbnb in Yucca Valley, California.

28. The grant deed for this property (address: 5323 Roberts Road, Yucca Valley, CA) lists Foord on the title page. However, the deed was granted only to Flores, "a single man," even though they were in a long-term domestic partnership.

29. The property was sold for $610,000 on August 12, 2022.

30. Upon information and belief, Foord conveyed her interest in the Property to Flores to hinder, delay or defraud AEG in collecting the funds that she stole from AEG.

31. Upon information and belief, Foord used funds that she stole from AEG to purchase the Property.

32. Upon information and belief, Flores received from Foord other proceeds and benefits derived from the funds that Foord stole from AEG.

33. AEG submitted an insurance claim for indemnity of the amounts stolen by Foord to its insurer, Berkley, which had issued a policy of insurance to AEG that covered losses sustained as a direct result of theft by an employee of the insured.

34. On or about August 1, 2023, Berkley paid AEG $653,567, representing a partial payment of covered loss as the result of Foord's thefts.

35. On or about August 8, 2023, Berkley reimbursed AEG for $11,561.63 for investigative costs associated with Foord's theft.

36. In consideration of the aforementioned payments totaling $665,128.63, AEG executed a Partial Release and Assignment Agreement on August 8, 2023, which assigned all of AEG's claims, rights, demands and causes of action against Foord and other persons or entities to Berkley.

37. The total loss suffered by AEG is $915,128.63, which includes $42,865.63 in investigative costs.

38. To date, Foord has not repaid any of the funds she stole from AEG.

## COUNT I

## FRAUDULENT CONCEALMENT (AGAINST FOORD)

The allegations in Paragraphs 1 through 38 above are incorporated by reference in this Count I as if fully restated herein.

39. At all relevant times, Foord concealed material facts by doctoring expense reports and receipts to appear as though she was making purchases for AEG events when she was really making purchases for herself.

40. At all relevant times, Foord concealed material facts by denying any thefts or wrongdoing when confronted with the fraud during her exit interview on or about February 22, 2022.

41. As a Senior Director, Partner Activation for Global Partners, Foord had a duty to disclose her wrongdoing to AEG, but instead chose to continually hide it over a several year period.

42. Foord's actions show she intended to defraud AEG by using AEG funds for personal items as well as using returned StubHub tickets for her own financial benefit.

43. AEG was unaware of Foord's fraudulent actions until a StubHub employee informed them of a potential fraud on or about February 11, 2022.

44. AEG took immediate action to investigate the fraud, and on February 22, 2022, terminated Foord.

45. Due to Foord's actions, AEG sustained damages of approximately $915,128.63.

46. Berkley, as the assignee and subrogee of AEG, is entitled to recover from Foord AIC's actual damages resulting from the fraudulent concealment in an amount to be proved at trial, but no less than $915,128.63.

///

# COUNT II

## UNJUST ENRICHMENT (AGAINST ALL DEFENDANTS)

The allegations in Paragraphs 1 through 46 above are incorporated by reference in this Count II as if fully restated herein.

47. Foord was unjustly enriched at the expense of and to the detriment of AEG. As described above, Foord knowingly acted in an unfair, unconscionable, and unlawful manner by taking at least $915,128.63 from AEG without its knowledge or authorization.

48. Foord received significant financial benefits from her fraudulent behavior including utilizing the StubHub credits from the cancelled events (tickets originally bought using AEG funds) to purchase tickets from a StubHub account belonging to her husband and buying herself goods (clothes, furniture, gift cards, etc.) with AEG's money and then altering receipts to conceal the purchases in her expense reports to make it appear the purchases were for AEG events.

49. As also described above, Foord purchased a property, namely 5323 Roberts Road, Yucca Valley, CA, with funds stolen from AEG after Foord promised AEG she would pay restitution.

50. Upon information and belief, Foord conveyed to Flores other proceeds and benefits derived from the funds that she stole from AEG.

51. Flores was also unjustly enriched at the expense of and to the detriment of AEG.

52. Foord has unjustly retained those funds to AEG's detriment, in violation of the principles of justice, equity, and good conscience.

53. Flores has unjustly retained property derived from Foord's thefts to AEG's detriment, in violation of the principles of justice, equity, and good conscience.

54. Accordingly, a constructive trust must be imposed compelling Foord and Flores to disgorge to Berkley all unlawful or inequitable proceeds that Foord and Flores received, and all funds and property that Foord and Flores unjustly retained that should have been paid to AEG.

55. Berkley, as the assignee and subrogee of AEG, is entitled to recover from Foord and Flores AEG's actual damages resulting from the unlawful fraud and thefts in an amount to be proved at trial, but no less than $915,128.63

56. Berkley seeks restoration of the monies of which AEG was unfairly, improperly, and unlawfully deprived, as described herein.

## COUNT III
## FRAUD (AGAINST FOORD)

The allegations in Paragraphs 1 through 56 above are incorporated by reference in this Count III as if fully restated herein.

57. Foord's actions described above constitute fraud upon AEG.

58. Foord concealed her fraudulent actions by (1) doctoring expense reports and receipts to appear as though she was making purchases for AEG events when she was really making purchases for herself and (2) when confronted with the fraud during her exit interview on February 22, 2022, Ms. Foord initially denied any wrongdoing before making a full admission.

59. Foord had knowledge that what she was doing was fraudulent.

60. In fact, during her exit interview on or about February 22, 2022, Foord showed AEG staff where she stored the receipts and pieces of receipts that she used to doctor receipts on her OneDrive.

61. By doctoring her expense reports, Foord had the intent to defraud AEG into believing the expenses were for legitimate business purposes when they were personal purchases.

62. This fraudulent concealment was material because Foord was able to steal more than $915,128.63 from AEG as a result of her concealment.

63. AEG relied on Foord to provide accurate, correct, and legitimate expenses for their clients in the normal course of business to AEG's detriment.

///

64. As a direct and proximate cause of such material concealment, AEG was defrauded and damaged in the amount of the funds stolen by Foord.

65. AEG has been damaged in an amount to be proved at trial, but no less than $915,128.63.

66. Berkley, as the assignee and subrogee of AEG, is entitled to recover from Foord AEG's actual damages resulting from Foord's fraud in an amount to be proved at trial, but no less than $915,128.63.

## COUNT IV
## CONVERSION (AGAINST FOORD)

The allegations in Paragraphs 1 through 66 above are incorporated by reference in this Count IV as if fully restated herein.

67. At all relevant times, AEG was the owner and entitled to the immediate possession of the funds used by Foord during her fraud, as well as the StubHub ticket return proceeds.

68. On numerous dates between 2019 and February 2022, Foord converted AEG's funds to defendant's own use by the acts set forth above.

69. Specifically, Foord fraudulently converted AEG's property by utilizing StubHub ticket return credits from the cancelled events to purchase tickets from a StubHub account belonging to her husband and manipulating receipt images to appear as legitimate business expenses/ uploading legitimate receipt images and misrepresenting them as being for sponsors when they were her personal expenses.

70. AEG demanded of Foord that she return the stolen funds to AEG, but Foord has not done and refuses to do so.

71. The value of the funds converted by Foord was in an amount to be proved at trial but no less than $915,128.63.

72. AEG sustained damages from the taking of its funds in an amount to be proved at trial, but no less than $915,128.63.

73. Berkley, as the assignee and subrogee of AEG, is entitled to recover from Foord AEG's actual damages resulting from the unlawful conversion in an amount to be proved at trial, but no less than $915,128.63.

## COUNT V
## FRAUDULENT CONVEYANCE (AGAINST ALL DEFENDANTS)

The allegations in Paragraphs 1 through 73 above are incorporated by reference in this Count IV as if fully restated herein.

74. AEG was a "creditor" of Foord, and by operation of the Release and Assignment Agreement between Berkley and AEG, Berkley, as assignee and subrogee, is a "creditor" of Foord.
75. Foord is a "debtor."
76. Flores is considered a "third person" or "third party" for purposes of Foord's fraudulent conveyance.
77. Foord agreed in her February 22, 2022, exit interview to pay AEG back for her fraudulent actions.
78. Foord advised that she was involved in a lawsuit against a medical provider and was expecting to receive a large sum from the suit.
79. Upon information and belief, Foord received between $250,000 - $300,000 from this suit.
80. Instead of returning to AEG the funds she stole, Foord purchased a property in Yucca Valley, California on August 12, 2022, using the stolen funds as well as funds received from her legal settlement.
81. The grant deed for this property (address: 5323 Roberts Road, Yucca Valley, CA) lists Ms. Foord on the title page, but the deed was granted only to Ms. Foord's husband, Edwin Flores, "a single man," even though they were in a long-term domestic partnership.

///

82. This use of funds by Ms. Foord to purchase a property, which was ultimately conveyed only to her husband, was done to prevent AEG from reaching Ms. Foord's funds to recoup the damages.

83. Upon information and belief, at the of the conveyance made Foord was insolvent, because she did not have sufficient assets to pay her debt to AEG.

84. AEG suffered damages as a result of this fraudulent conveyance.

85. Berkley, as the assignee and subrogee of AEG, is entitled to a judgment in its favor against Foord and Flores for avoidance of the fraudulent conveyance in an amount to be determined at trial, and for recovery of the avoided conveyance.

86. A constructive trust must be imposed compelling Foord and Flores to disgorge to Berkley all unlawful or inequitable proceeds that Foord and Flores received, and all funds and property that Foord and Flores unlawfully retain.

## **PRAYER FOR RELIEF**

WHEREFORE, Berkley respectfully requests that this Honorable Court enter judgment in its favor and against Foord and Flores as follows:

1) That Berkley be awarded general compensatory damages in an amount to be determined at trial, but not less than $ 915,128.63;

2) That the Court decree that Foord and Flores have been unjustly enriched by Foord's wrongful conduct, and award restitution in an amount to be determined at trial, but not less than $915,128.63;

3) That the Court enter judgment in Berkley's favor against Foord and Flores for avoidance of the fraudulent conveyance of the Yucca Valley, CA Property in an amount to be determined at trial, and recovery of the avoided conveyance;

4) That the Court impose a constructive trust compelling Foord and Flores to disgorge to Berkley all unlawful or inequitable proceeds Foord and Flores received in an amount to be determined at trial, but not less than $ 915,128.63;

5) That Berkley be awarded its attorney's fees and costs in this action; and

6) That Berkley be awarded any such other and further relief as this Honorable Court deems necessary.

Dated: February 10, 2025

*[signature]*

Steve Belilove (SBN 119506)
sbelilove@kaufmandolowich.com
Kaufman Dolowich LLP
11111 Santa Monica Blvd., Suite 850
Los Angeles, California 90025
(310) 775-6511

Stefan Dandelles
sdandelles@kaufmandolowich.com
pending admission *pro hac vice*
Kyle McConnell
kmcconnell@kaufmandolowich.com
pending admission *pro hac vice*
Kaufman Dolowich LLP
30 N. LaSalle Street, Suite 1700
Chicago, Illinois 60602
Attorneys for Defendant
BERKLEY INSURANCE COMPANY